UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ULYSSES A. GRANT,

      Petitioner,

v.                                         Case No. 8:16-cv-1978-T-02SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Ulysses A. Grant, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) challenging his Hillsborough County convictions. The Court ordered Respondent Secretary, Department of Corrections, to show cause why the relief sought in the petition should not be granted. (Dkt. 7). Respondent filed a response, along with the state court record. (Dkts. 13, 15). Mr. Grant filed a reply. (Dkt. 18). Upon consideration, the petition will be denied.

## Background

      Mr. Grant was charged with three counts of delivery of cocaine to a confidential informant within 1,000 feet of a school. (Dkt. 15, Ex. 32, Vol. 1, p. 12). Count one was severed from counts two and three. Mr. Grant was convicted of count one after a jury trial. (*Id.*, p. 62). The trial court sentenced him to six years in prison, followed by 10 years of probation. (*Id.*, p. 85). After another jury trial, Mr. Grant was convicted of counts two and three. (Dkt. 15, Ex. 33, Vol. 2, p. 141). He received sentences of six years in prison, followed by 10 years of probation. (*Id.*). The sentences for counts two and three were concurrent to each other but consecutive to the sentence for count one.

(*Id.*, pp. 143-44). The state appellate court *per curiam* affirmed all three convictions and sentences. (Dkt. 15, Exs. 5, 10). Mr. Grant filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 15, Ex. 12). The state court denied relief following an evidentiary hearing. (Dkt. 15, Exs. 17, 18). The state appellate court *per curiam* affirmed. (Dkt. 15, Ex. 22). Mr. Grant later filed a petition for writ of habeas corpus in the Florida Supreme Court, which was dismissed in part and denied in part. (Dkt. 15, Exs. 30, 31).

Grounds One, Two, Three, and Four of Mr. Grant's federal habeas petition challenge his conviction for count one. Ground Five of Mr. Grant's federal habeas petition appears to challenge his convictions for all three counts.

## Discussion

I.    Procedurally Defaulted Claims

*Exhaustion of State Court Remedies; Procedural Default*

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

II.    Merits Review

   *Standard of Review Under AEDPA*

   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

   AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different

3

from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Grant's conviction and sentence, as well as the denial of postconviction relief, without discussion. Similarly, the Florida Supreme Court denied in part Mr. Grant's petition for writ of habeas corpus without explanation. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

A. *Ground One*

Mr. Grant argues that the State's evidence was insufficient to sustain his conviction, resulting in a federal due process violation. However, as Respondent contends, Mr. Grant's federal claim is unexhausted. On appeal, Mr. Grant presented his claim as one of state law. (Dkt. 15, Ex. 2, pp. 10-13). He did not cite any federal authority or raise any issues of federal law. (*Id.*). A petitioner may be able to exhaust a federal sufficiency of the evidence claim by presenting an analogous state claim in state court if the federal and state courts apply the same standard of review. *Mulnix v. Sec'y for Dep't of Corr.*, 254 F. App'x 763 (11th Cir. 2007). The standard applied by a federal habeas court

4

is whether, considering the evidence in the light most favorable to the prosecution, a rational trier of fact could find proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

On appeal, however, Mr. Grant asserted that Florida's distinguishable and heightened standard for circumstantial evidence cases applied. (Dkt. 15, Ex. 2, pp. 10-13). Under this standard, "no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 460 (11th Cir. 2015) (quoting *Thorp v. State*, 777 So.2d 385, 389 (Fla. 2000)). Accordingly, Mr. Grant failed to exhaust his federal sufficiency of the evidence claim. *See id.* at 462 (holding that the petitioner did not exhaust a federal claim when his appellate brief relied on Florida's "unique" standard of review for circumstantial evidence cases, cited exclusively to state decisions, and presented substantive arguments based solely on Florida law).

Mr. Grant cannot return to state court to exhaust a federal sufficiency of the evidence claim because state procedural rules do not provide for second appeals. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of the sentence). Therefore, his sufficiency of the evidence claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Grant does not argue or establish that the cause and prejudice exception applies to excuse the default.

In his reply, Mr. Grant refers to "a miscarriage of justice[.]" (Dkt. 18, p. 4). To the extent Mr. Grant alleges that the fundamental miscarriage of justice exception applies to excuse the default, his argument must fail. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually

5

innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). Mr. Grant's "claim of innocence is ... 'not itself a constitutional claim, but instead a gateway through which [he] must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir 2001). Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, ... a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324. Mr. Grant has not offered any new, reliable evidence showing his actual innocence and the trial record shows otherwise. Accordingly, he has not established that the fundamental miscarriage of justice exception applies to excuse the default of his federal sufficiency of the evidence claim. As Mr. Grant has not shown that the procedural default should be excused, Ground One is barred from federal habeas review.

*Alternately, the Evidence Was Sufficient*

As an alternate ruling, the Court has reviewed the trial record, and there was indeed sufficient evidence on the count one sale. So even if Ground One were not procedurally defaulted, it fails on the merits. The informant testified to purchasing the count one contraband directly from Mr. Grant. It was shortly after 1:45 p.m. (Dkt. 15, Ex. 32, Vol. 3, p. 175) and 550 feet from an elementary school. (*Id.*, p. 207). Moreover, part of the sale (but not the precise transfer) was viewed by officers. In turn, Mr. Grant testified at trial and denied the count one sale. (Dkt. 15, Ex. 32, Vol. 4, pp. 346,

6

348-49).

The jury was simply entitled to disbelieve Mr. Grant's trial testimony, which apparently the jury did. His denial of "sufficiency" was squarely rejected by the jury and the informant's version was credited. As Mr. Grant testified at the post-trial hearing, "there is nothing to say, nothing that I committed this crime besides her word of mouth. . . . She made up the whole thing." (Dkt. 15, Ex. 17, p. 148). Mr. Grant's trial testimony may have been less credible given his six prior felonies he informed the jury about. (Dkt. 15, Ex. 32, Vol. 4, p. 344).

    B.   *Ground Two*

The confidential informant was identified at trial as Sherry Williams. She testified as to the direct purchase of cocaine from Mr. Grant's hand. Trial testimony from Ms. Williams and law enforcement indicated that she had been working as a confidential informant for the Tampa Police Department for twenty years with a few short hiatuses. (Dkt. 15, Ex. 32, Vol. 3, pp. 172-74, 229-31, 233, 283).

During the State's direct case and also on cross, the informant testified that she had been convicted of five felonies or crimes involving dishonesty. The officers testified that street informants like Ms. Williams work for money or for sentencing leniency, and in this case the officer testified accurately that Ms. Williams was working for money. (Dkt. 15, Ex. 32, Vol. 3, p. 173).

On cross-examination, counsel wanted to ask Ms. Williams "whether she's picked up a felony while working as a confidential informant." (*Id.*, p. 280). The prosecutor objected to this question as irrelevant. (*Id.*, p. 281). After allowing counsel to proffer Ms. Williams's testimony, the trial court sustained the objection. (*Id.*, p. 285). The proffer showed a drug possession felony occurred in 2004 at which time the informant testified she took a hiatus to resolve the matter. (*Id.*,

pp. 282-85). Mr. Grant contends that the trial court erred in limiting counsel's cross-examination of Ms. Williams, resulting in violations of his rights to due process and confrontation. The state appellate court rejected Mr. Grant's claim without discussion when it *per curiam* affirmed his conviction and sentence.

The jury heard twice of the informant's five priors. Presumably, the jury was capable of deducing that one or more of these five priors was during the nearly 20 years the informant was working for the police as a street buyer.

The Confrontation Clause guarantees the right of a criminal defendant "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. "The main and essential purpose" of confrontation is to allow for cross-examination, which is "the principal means" to challenge a witness's credibility. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (citation omitted). The right to cross-examination is "essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Further, "[t]he importance of full cross-examination increases where the witness is the star government witness or participated in the crimes for which the defendant is being prosecuted." *United States v. Williams*, 526 F.3d 1312, 1319 (11th Cir. 2008) (citing *United States v. Taylor*, 17 F.3d 333, 340 (11th Cir. 1994)).

However, limits on cross-examination are permissible because "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Accordingly, "once there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the [trial] court's discretion." *Williams*, 526 F.3d at 1319 (quoting *Taylor*, 17 F.3d at 340); *see also United States v.*

*Jackson*, 597 F. App'x 1057, 1059 (11th Cir. 2015) ("[S]o long as a defendant is able to elicit sufficient information from which the factfinder can assess a witness's possible motive or bias, the right of confrontation is satisfied." (citing *United States v. Barrington*, 648 F.3d 1178, 1188 (11th Cir. 2011))).

Therefore, "[t]he test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *Williams*, 526 F.3d at 1319 (quoting *United States v. Garcia*, 13 F.3d 1464, 1469 (11th Cir. 1994)). No Confrontation Clause violation occurs when "(1) the jury, through the cross-examination permitted, was exposed to facts sufficient for it to draw inferences relating to the reliability of the witness; and (2) the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the witness might have been biased." *United States v. Calle*, 822 F.2d 1016, 1020 (11th Cir. 1987).

Here, counsel was able to develop sufficient facts from which the jury could make inferences about Ms. Williams's reliability from her five convictions and her present monetary motivation from which he could argue that Ms. Williams was not credible. Counsel elicited Ms. Williams's testimony that she never signed a confidential informant agreement with the Tampa Police Department, and then impeached this testimony by producing the executed agreement. (Dkt. 15, Ex. 32, Vol. 3, pp. 249-51; Vol. 4, pp. 332-34). Further, counsel impeached Ms. Williams's testimony that she did not engage in illegal activity while working as a confidential informant by addressing evidence of her involvement in drug activity. (Dkt. 15, Ex. 32, Vol. 3, pp. 250-51, 257). Counsel also brought out Ms. Williams's prior inconsistent statements about the events leading up to the offense. (*Id.*, pp. 260-61, 279-80). Given her five priors, the very limited restraint on cross caused

by the Court's ruling could not have had an appreciable effect.

Accordingly, Mr. Grant has not shown any federal constitutional violation resulting from the trial court's decision to prevent counsel from cross-examining Ms. Williams about whether she had "picked up" a felony while working as a confidential informant. As Mr. Grant does not show that the state appellate court's rejection of his claim was contrary to or involved an unreasonable application of clearly established federal law, he is not entitled to relief on Ground Two.[1]

C.    *Ground Three*

Mr. Grant contends that the prosecutor improperly vouched for the credibility of Officer Benjamin Brown and Officer Eric Defelice during closing arguments. Assuming that Mr. Grant has properly exhausted a federal claim,[2] he fails to show entitlement to relief.

Officers Brown and Defelice were involved in this investigation. They testified that after they dropped Ms. Williams off near Mr. Grant's home, they watched her from their car. They testified that they observed Mr. Grant and Ms. Williams together outside of Mr. Grant's home, but acknowledged that from their position, they could not actually see Mr. Grant hand the drugs to Ms. Williams. (Dkt. 15, Ex. 32, Vol. 3, p. 182; Vol. 4, p. 308). During his rebuttal closing argument, the prosecutor addressed the police officers' testimony:

[Officers Brown and Defelice] saw this transaction occur and they're not going to

---

[1] Counsel unsuccessfully sought a new trial based in part on the court's limitation of his cross-examination. (Dkt. 15, Ex. 32, Vol. 1, pp. 66-70, 74). Mr. Grant mentions the motion for new trial in Ground Two. To the extent he might intend to raise a claim that the trial court erred in denying the motion for new trial, the claim would not be cognizable on federal habeas review. The question of whether the trial court properly denied the motion under Florida's standard for a new trial is one of state law. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

[2] It is not apparent that Mr. Grant exhausted a federal claim on direct appeal. (Dkt. 15, Ex. 2, pp. 17-20). However, Respondent does not address the potential failure to exhaust a federal claim.

10

stretch the truth. They're not going to lie to you and say, yeah, you know, we could actually see - -

(Dkt. 15, Ex. 32, Vol. 4, pp. 437-38).

Counsel objected to the prosecutor's "talking about credibility" and the prosecutor said he would "rephrase it." (*Id.*, p. 438). The trial court told the prosecutor, "Counsel, you're getting dangerously close. . . . I don't think you're quite there, but [defense counsel's] point is well made. Go back and complete your argument." (*Id.*). The prosecutor continued:

> Ladies and gentlemen, I submit to you that Ben Brown and Eric Defelice, they did not come up here yesterday and stretch the truth. They did not come up here and tell you something that was untrue.
>
> I submit to you that if they were going to do that, it would make a lot more sense for them to say, you know what? We saw the drugs change hands. We saw the money change hands. . . .
>
> And the reason why they didn't say they saw those things is because they didn't see those things.

(Dkt. 15, Ex. 32, Vol. 4, pp. 438-39). The state appellate court denied Mr. Grant's prosecutorial misconduct claim without elaboration when it *per curiam* affirmed his conviction and sentence.

A prosecutor may not "bolster a witness's testimony by vouching for that witness's credibility." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313–14 (11th Cir. 2010) (citing *United States v. Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999). "Bolstering occurs when 'the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.'" *Id.* (quoting *United States v. Knowles,* 66 F.3d 1146, 1161 (11th Cir.1995)).

However, a prosecutor may comment on a witness's credibility. *Id.* Additionally, "[a] prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." *United States v. Stanley*, 495 F. App'x 954, 957 (11th Cir. 2012) (citing *United States v. Sarmiento,*

11

744 F.2d 755, 765 (11th Cir. 1984)). Otherwise improper prosecutorial comments can be permissible when made in response to matters raised by the defense. *See United States v. Rodgers,* 981 F.2d 497, 499 (11th Cir. 1993) ("The challenged remarks at closing argument, although probably improper if viewed in isolation, were replies in kind to comments appellant's counsel had made during appellant's opening and closing statements.") (citation omitted).

Here, defense counsel challenged the officers' credibility in his closing argument. Counsel questioned the accuracy and reasonableness of the officers' testimony, and cast doubt on whether they could have seen the events to which they testified from their location a distance away. (Dkt. 15, Ex. 32, Vol. 4, pp. 405-12, 420). The prosecutor's statements must be assessed in the context of the entire proceeding. *See United States v. Hall,* 47 F.3d 1091, 1098 (11th Cir. 1995) ("Claims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." (citing *United States v. Obregon,* 893 F.2d 1307, 1310 (11th Cir. 1990))). When considered in context, the prosecutor's remarks were a permissible response to defense counsel's argument, rather than improper vouching for the officers' credibility.

Even if somehow this were error, Mr. Grant has not shown entitlement to federal habeas relief because any error was harmless. *See United States v. Jacoby,* 955 F.2d 1527, 1541 (11th Cir. 1992) ("[A] prosecutor's statements during closing argument require reversal only if 'the comments are both improper and prejudicial to a substantial right of the defendant.'" (quoting *United States v. Rodriguez-Suarez,* 856 F.2d 135, 139 (11th Cir. 1988))). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *Hall,* 47 F.3d at 1098 (citing *Kennedy v. Dugger,* 933 F.2d 905, 914 (11th Cir. 1991)); *see Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (holding that in a § 2254

proceeding, a constitutional error will only provide relief if it resulted in actual prejudice by having a "substantial and injurious effect or influence in determining the jury's verdict.")

Mr. Grant has not shown that the prosecutor's comments prejudiced his substantial rights. The trial court's instructions to the jury must be considered in assessing the effect of the prosecutor's statements. *See United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990) ("Because statements and arguments of counsel are not evidence, improper statements can be rectified by the [trial] court's instruction to the jury that only the evidence in the case be considered.") (citations omitted). The court instructed the jury that what the attorneys said was not evidence, and that the case must be decided on the evidence presented through testimony and exhibits. (Dkt. 15, Ex. 32, Vol. 4, pp. 385, 446, 449). "[J]urors are presumed to follow the court's instructions." *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001). Accordingly, it is presumed that the jurors only evaluated the evidence introduced at the trial for proof of guilt, and did not consider the prosecutor's statements as evidence.

Further, the State presented significant evidence of guilt.[3] Ms. Williams testified that, after police gave her cash and dropped her off near Mr. Grant's home, Mr. Grant came outside and they proceeded to the side yard. (Dkt. 15, Ex. 32, Vol. 3, pp. 235-37, 239). She testified that she gave Mr. Grant the cash and he gave her three "stones," *i.e.*, pieces of crack cocaine. (*Id.*, pp. 237-38). After Ms. Williams walked away, the officers picked her up nearby and she gave them the crack. (*Id.*, pp. 240-41).

Officer Brown testified that he searched Ms. Williams before she was dropped off, and that

---

[3] To show delivery of cocaine within 1,000 feet of a school, the State had to prove beyond a reasonable doubt that (1) Mr. Grant delivered a certain substance; (2) the delivery was in, on, or within 1,000 feet of a school between 6:00 a.m. and 12:00 midnight; and (3) the substance was cocaine. (Dkt. 15, Ex. 32, Vol. 1, p. 50). "Delivery" is the "actual, constructive, or attempted transfer from one person to another[.]" (*Id.*).

she did not have any contraband on her person. (Dkt. 15, Ex. 32, Vol. 3, pp.176-77). The officers testified that after they dropped Ms. Williams off, they observed her from their car. (Dkt. 15, Ex. 32, Vol. 3, pp. 178-83; Dkt. 15, Ex. 32, Vol. 4, pp. 307-08, 313). Officer Brown testified that he saw Ms. Williams and Mr. Grant come "very close together" near the back of the house. (Dkt. 15, Ex. 32, Vol. 3, p. 182). Officer Defelice testified that he saw gestures "as if somebody were giving and receiving something." (Dkt. 15, Ex. 32, Vol. 4, p. 308). When they picked up Ms. Williams, she gave them a substance, but no longer had the cash they had given her. (Dkt. 15, Ex. 32, Vol. 3, pp. 184; Vol. 4, pp. 309-10). The state also presented evidence that Ms. Williams and Mr. Grant met less than 1,000 feet from a school at approximately 1:45 p.m., and that the substance Ms. Williams gave police tested positive for cocaine. (Dkt. 15, Ex. 32, Vol. 3, pp. 175, 207, 223-25).

Given this evidence and the trial court's instructions, Mr. Grant has not shown a reasonable probability that the outcome of trial would have been different but for the prosecutor's remarks. Accordingly, he fails to show that the comments prejudicially affected his substantial rights. *Hall*, 47 F.3d at 1098. As Mr. Grant has not established that the state appellate court's denial of his claim was contrary to or involved an unreasonable application of clearly established federal law, he is not entitled to relief on Ground Three.

D.    *Ground Four*

Mr. Grant alleges ineffective assistance of trial counsel. His claim is analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly

14

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

A petitioner must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

Mr. Grant argues that trial counsel was ineffective for introducing "prior bad acts of uncharged crimes into evidence at trial." (Dkt. 1, p. 10). Over the State's objection, counsel elicited Ms. Williams's testimony on cross-examination that she had received cocaine from Mr. Grant around the time she was working as a confidential informant:

> Q.  Okay. So when you were working at the laundr[o]mat, what kind of work were you doing there?
>
> A.  Wash, dry and fold.
>
> Q.  Since 2007, right?
>
> A.  Yes.

Q.   And you knew Mr. Grant from coming in to do his laundry there and get this laundry done there?

A.   Yes.

Q.   In 2007 also, right?

A.   Yes.

Q.   Now, you would - - you would wash, dry and fold his laundry?

A.   Yes.

Q.   He would pay you, right?

A.   Yes.

Q.   Okay.  And in 2007 when you were paid, how would he pay you?

A.   In crack cocaine.

Q.   And what would you do with that crack cocaine he paid you with?

A.   I gave it to my sister.

Q.   And this is going on while you're a confidential informant, right?

A.   Not - - I wasn't working directly with them at that time.

Q.   You were not working with them directly at that time?

A.   Yes.

Q.   Meaning what?  You resigned?

A.   No.  That means that I had slacked up.

Q.   What does that mean, you slacked up?

A.   Well, I wasn't - - I wasn't working - - I wasn't working with them for a period of time.

Q.   And why was that?

A.    Because I just stopped doing it for a while. I gave myself a break.

Q.    So in 2007 when you weren't doing it anymore, did you notify the Tampa Police Department that, hey, I'm no longer doing the - - no longer doing these [sic] C.I. stuff, I'm giving myself a break? Did you notify them of that?

A.    No. I just stopped calling.

Q.    So on the books, you were still listed as a confidential informant.

A.    Yes.

(Dkt. 15, Ex. 32, Vol. 3, pp. 256-58).

The state court conducted an evidentiary hearing on Mr. Grant's ineffective assistance claim. Mr. Grant testified that counsel never discussed with him the possibility of impeaching Ms. Williams through evidence of prior drug transactions, and that he did not give counsel permission to address this matter at trial. (Dkt. 15, Ex. 17, pp. 130-31). Counsel testified that he did discuss this subject with Mr. Grant. (*Id.*, pp. 174-75). Counsel testified that he addressed the prior drug transactions to impeach Ms. Williams's credibility by showing that she was "acting outside of the instructions of law enforcement" and to demonstrate that she had access to drugs and therefore could have "obtained the drugs, . . . hid them somewhere and provided them to law enforcement." (*Id.*, pp. 175-76).

The state court denied Mr. Grant's claim. In its order, the state court summarized Mr. Grant's argument and the hearing testimony before concluding:

> After reviewing the allegations, the State's response, the court file, and the record, the Court finds that Defendant failed to meet the two prong test as set forth in *Strickland.* When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

> In conducting our review, there is a strong presumption that trial counsel's performance was not ineffective, and the defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might' be

17

considered sound trial strategy." *See Strickland*, 466 U.S. at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So.2d 1037, 1048 (Fla. 2000).

The Court finds that trial counsel made a strategic decision to introduce these prior bad acts on cross-examination of the CI, Ms. Williams. Trial counsel knew that Ms. Williams would be called as a key witness by the State and that it would be necessary to attempt to cast as much doubt as possible on her testimony regarding the drug transaction. Therefore, counsel found it necessary to introduce these prior bad acts in order to demonstrate Ms. Williams' lack of credibility, thereby undermining her testimony regarding the instant charges. The Court finds that this strategic decision was reasonable. Moreover, the Court finds that counsel's testimony at the evidentiary hearing was more credible than Defendant's testimony. The Court finds Defendant's testimony was contradictory and not straightforward. The Court finds that based on counsel's testimony, [counsel] did in fact have a conversation with Defendant regarding the introduction of these prior bad acts prior to trial. As such, Defendant cannot satisfy the deficiency prong of *Strickland*.

**Accordingly, in view of the strategic decision of counsel, no relief is warranted. The Court must deny Claim One of Defendant's Motion.**

(Dkt. 15, Ex. 18, pp. 67-68) (emphasis in original).

The state court's findings that counsel's choice was strategic and that counsel's testimony was credible are findings of fact. *See DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact[.]"); *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) (stating that a state court's credibility finding is a factual finding). These findings of fact are presumed correct, and Mr. Grant must present clear and convincing evidence to rebut the presumption. *See* 28 U.S.C. § 2254(e)(1) (providing that in a § 2254 proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Mr. Grant has not

done so.

Mr. Grant must show that counsel's strategic decision to elicit the challenged testimony was so "patently unreasonable" that no competent attorney would have made the same decision. *See Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that a strategic choice "will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983))).

Mr. Grant has not made this showing. As addressed, Officers Brown and Defelice conceded that they did not see Mr. Grant give drugs to Ms. Williams. (Dkt. 15, Ex. 32, Vol. 3, p. 182; Vol. 4, p. 308). Therefore, Ms. Williams's testimony that Mr. Grant delivered cocaine to her was critical. Accordingly, counsel attempted to challenge Ms. Williams's credibility, and he stated that eliciting the testimony in question helped him do so by showing that Ms. Williams engaged in illegal activity while ostensibly working to help law enforcement.

Under the circumstances, Mr. Grant fails to show that no competent attorney would have made the strategic choice that his counsel did to elicit this testimony from Ms. Williams. *See Dingle*, 480 F.3d at 1099. Accordingly, Mr. Grant fails to show that the state court unreasonably applied *Strickland*'s deficient performance prong in denying his ineffective assistance claim.

Defense counsel at the post-trial hearing articulated a rational, albeit unorthodox, reason for this strategy. A review of the record does show some logic to the strategy. The informant testified she had been an informant for 20 years and she knew not to be involved in illegal acts, and did not engage in illegal acts. This strategy impeached her, and her credibility was the entire case. It tended to show she lied in obtaining drugs for her sister, showing both a dishonesty to the officers who

19

handled her cases and a dishonesty to the jury. Mr. Grant testified she was lying about this crack for laundry trade. (Dkt. 15, Ex. 32, Vol. 4, p. 346). This strategy melded with the other defense tactic of showing the informant was an unstable addict. (Dkt. 15, Ex. 32, Vol. 4, p. 345).

Even if this Court were to find that the state court's decision was unreasonable and conduct a *de novo* review, this Court would conclude that Mr. Grant cannot establish entitlement to relief because he has failed to establish prejudice as a result of counsel's conduct.[4] As addressed in Ground Three, *supra*, the prosecution presented substantial evidence of guilt. When Mr. Grant testified at trial, he denied selling drugs to Ms. Williams but also repeatedly stated that he could not specifically remember what happened on the date of the offense. (Dkt. 15, Ex. 32, Vol. 4, pp. 346, 348, 349). This testimony did not contradict the State's version of events with specificity or detail. In light of the evidence of guilt, as well as the generalized nature of Mr. Grant's defense, Mr. Grant fails to show a reasonable probability that the outcome of trial would have been different if the jury had not heard Ms. Williams's testimony that Mr. Grant had previously given her drugs. Thus, Mr. Grant fails to show prejudice as a result of counsel's performance. He is not entitled to relief on Ground Four.

E. *Ground Five*

Mr. Grant alleges governmental misconduct, claiming that police improperly paid Ms. Williams to "manufacture" crimes. (Dkt. 1, p. 15). In support, Mr. Grant contends police acted on Ms. Williams's information that he was a potential source of drugs even though he was not "a target of any ongoing investigation" and that Ms. Williams "gained" from the investigations. (*Id.*). Mr.

---

[4] *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 930-35 (11th Cir. 2011) (applying *Strickland*'s prejudice prong *de novo* upon finding that the state court's decision, which only addressed *Strickland*'s deficient performance prong, involved an unreasonable application of clearly established federal law).

Grant also appears to claim that Ms. Williams was not reliable, asserting that the police did not "maintain constant visual" observation of her while she met with Mr. Grant, that she has prior convictions, and that she has committed crimes under an alias. He alleges violations of his rights under the Fourth, Sixth, and Fourteenth Amendments.

Mr. Grant raised this claim in a petition filed in the Florida Supreme Court.[5] Respondent asserts that this claim is procedurally defaulted because Mr. Grant did not properly raise this claim in state court. *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) ("In the process of exhausting a claim, the petitioner must comply with all 'independent and adequate' state procedures, or else the petitioner will have procedurally defaulted on that claim.") (citations omitted). In dismissing Mr. Grant's petition in part, the Florida Supreme Court stated:

> To the extent the petitioner challenges his convictions and sentences, the petition is dismissed as unauthorized. See Baker v. State, 878 So. 2d 1236 (Fla. 2004). To the extent the petitioner seeks review of the district court's decision in Grant v. State, 73 So. 2d 767 (Fla. 2d DCA 2011) [the decision affirming Mr. Grant's conviction and sentence for count one], the petition is dismissed for lack of jurisdiction. See Grate v. State, 750 So. 2d 625 (Fla. 1999).

(Dkt. 15, Ex. 31).

This part of the Florida Supreme Court's order supports Respondent's contention of a procedural default. But the order also stated that, "[t]o the extent the petitioner seeks additional relief, the petition is denied." (*Id.*). This language suggests that the Florida Supreme Court considered at least some of Mr. Grant's allegations on the merits. *Cf. Cantu v. State*, 33 So.3d 145, 147 (Fla. 2d DCA 2010) ("The trial court's dismissal–rather than denial–of Cantu's motion to

---

[5] Mr. Grant's petition can be viewed by visiting http://onlinedocketssc.flcourts.org and searching for case number SC16-442. (last visited August 6, 2019). This Court takes judicial notice of the state court's online records. Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

withdraw plea indicates that the trial court did not reach the merits of the motion.").

Accordingly, this Court may proceed as if the Florida Supreme Court reviewed Mr. Grant's claims of governmental misconduct on the merits. Mr. Grant has not shown that the state court's denial was contrary to or an unreasonable application of clearly established federal law. The United States Supreme Court has recognized the possibility that law enforcement conduct may be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction[.]" *United States v. Russell*, 411 U.S. 423, 431-32 (1973). However, to rise to this level, law enforcement conduct must "violat[e] that 'fundamental fairness, shocking to the universal sense of justice,'" required by due process. *Id.* at 432 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960)).

Mr. Grant has not established that the government violated his constitutional rights by utilizing Ms. Williams's information to identify him as a potential source of drugs or by providing her with money to purchase drugs from him. *See United States v. Wilson*, 238 F. App'x 571, 573 (11th Cir. 2007) ("Government infiltration of criminal activity and the furnishing of something of value to the criminal is a recognized and permissible means of investigation. . . . It is an acceptable and constitutional investigatory technique to utilize confidential informants to purchase drugs from drug dealers.") (citing *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998)).

Nor has Mr. Grant shown that the government's contingency payment to Ms. Williams violated his federal constitutional rights. Mr. Grant does not allege, and the evidence adduced at trial does not suggest, that Ms. Williams stood to benefit financially if Mr. Grant was convicted. Rather, Ms. Williams testified she received payment for successfully purchasing drugs. (Dkt. 15, Ex. 32, Vol. 3, p. 252). That arrangement was not improper. *See Owen v. Wainwright*, 806 F.2d 1519, 1522

(11th Cir. 1986) ("Contingent fee arrangements with informants have been upheld in this circuit where the fee is contingent on a successful investigation in general rather than the successful prosecution of a particular individual."); *United States v. Gray*, 626 F.2d 494, 499 (5th Cir. 1980) ("[A]n informant's testimony will not be rejected unless there is evidence that he was promised payment contingent upon conviction of a particular person.").[6]

Mr. Grant has not established that the government violated his federal constitutional rights by utilizing a confidential informant who Mr. Grant believes was not reliable. Further, Ms. Williams's credibility as a witness was a matter for the jury's determination. A full review of the transcript in this routine street crack purchase shows Mr. Grant has not demonstrated any fundamentally unfair governmental conduct that resulted in a federal constitutional violation. *See Russell*, 411 U.S. at 431-32. Because Mr. Grant does not show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, he is not entitled to relief on Ground Five.

III.   New Claims Raised in Mr. Grant's Reply

Mr. Grant raises new claims in his reply. He claims that the trial judge was not impartial and that the police officers were improperly allowed to vouch for one another's credibility. Mr. Grant cannot bring new claims in his reply. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[W]e do not address arguments raised for the first time in a *pro se* litigant's reply brief."); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation omitted). Furthermore, Mr.

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit).

Grant does not clearly argue that any of these alleged errors resulted in a federal constitutional violation. As his new claims therefore appear to involve the application of Florida law, they would not be cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Accordingly, it is **ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk shall enter judgment accordingly and is directed to close this case.

3. Mr. Grant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). A certificate of appealability must first issue. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Mr. Grant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Mr. Grant has not made the requisite showing. Because Mr. Grant is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on ___August   7___, 2019.

_____
WILLIAM F. JUNG
United States District Judge

<u>Copies furnished to</u>: Ulysses A. Grant and Counsel of Record

24